AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Precision Location Information; Subscriber & Transactional Records; Cell Site Information; Pen Register & Trap-and-Trace for Phone # (314) 939-3986.

) ) ) ) ) )

Case No.  4:24 MJ 7004 SPM

SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ New Jersey _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18:2322; | Knowingly owning, operating, maintaining or controlling a chop shop; |
| 18:2312; | Knowingly transporting stolen vehicles across state lines; |
| 18:2313 | Knowingly selling, receiving, possessing, concealing, or disposing of stolen vehicles crossing state lines or U.S. borders |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the foregoing is true and correct.

*Applicant's signature*

SFO Patrick J. Riordan, FBI

*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: _____ 02/05/2024 _____

*Judge's signature*

City and state: _____ St. Louis, MO _____

Honorable Shirley P. Mensah, U.S. Magistrate Judge

*Printed name and title*

**ATTACHMENT A**
**4:24 MJ 7004 SPM**

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) & B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a Warrant and Order requiring a telecommunications service provider reflected in Part II of this Attachment A, to disclose the records and other information concerning the account described in Part I of this Attachment A.

### I.    The Account(s)

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---|---|---|---|
| **T-Mobile** | **(314) 939-3986** (subject cellular telephone) | UNKNOWN | **CRUZ, Charlie, and unknown subjects** |

### II.    The Provider

Records and information associated with the subject cellular telephone that is within the possession, custody, or control of **T-Mobile**, and other applicable service providers reflected on the list contained in this Attachment A, including information about the location of the subject cellular telephone if it is subsequently assigned a different call number.

1

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
| d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications | Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications | Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications [1] |
| | Metro Teleconnect | | |

---

[1] Last Update: 03/17/2019

**ATTACHMENT B**
**4:24 MJ 7004 SPM**

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

**I.      PRECISION LOCATION INFORMATION**

    **A.      Information to be Disclosed by the Provider**

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from February 5, 2024 to March 20, 2024, 11:59 p.m. (CT) during all times of day and night, regarding the location of the subject cellular telephone described in Attachment A.

"Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agencies.

    **B.      Information to Be Seized by the United States**

All information described above in Part I, Section A that constitutes evidence of violations of  Title 18, United States Code, Sections 2322 (knowingly own, operate, maintain or control a chop shop) and Title 18, Sections 2312 (knowingly transport stolen vehicles across state lines) and

1

Section 2313 (knowingly sell, receive, possess, conceal or dispose of stolen vehicle crossing state line or U.S. borders) (hereinafter referred to as "the subject offenses"), by persons unknown.

## II.     CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA

For the **subject cellular telephone** identified in Attachment A, the following telecommunication records and information, but not the contents of any communication for the past thirty (30) days from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

**Information to be Disclosed by the Provider**

1.     All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2.     Length of service;

3.     All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI")  numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, Media Access Control (MAC),  and primary long-distance carrier;

4.     Subscriber information available for any originating telephone number;

5.     Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the subject cellular telephone) for the above-specified time period;

2

6.      Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone;

7.      Cellular telephone records and information pertaining to the following, for the above-specified time period:

(a)      call detail information such as (provided in an electronic format specified by the agents/officers of the investigative agencies, and other authorized federal/state/local law enforcement agencies);

(b)      cell site activation information, including information identifying the antenna tower receiving transmissions from the subject cellular telephone number, and any information on what portion of that tower is receiving a transmission from the subject cellular telephone number, at the beginning and end of a particular telephone call made to or received by the subject cellular telephone number;

(c)      numbers dialed;

(d)      call duration;

(e)      incoming numbers if identified;

(f)      signaling information pertaining to that number;

(g)      a listing of all control channels and their corresponding cell sites;

(h)      an engineering map showing all cell site tower locations, sectors and orientations;

(i)      subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the subject cellular telephone;

3

(j)     historical location estimates and range to tower information, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD), True Call;

(k)     Time Difference of Arrival (TDOA), and,

(l)     Internet Protocol (IP addresses) utilized by and signaled to and from the subject cellular telephone.

## III.     PEN REGISTERS AND TRAP AND TRACE DEVICES

For the subject cellular telephone identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1.     Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agencies and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the subject cellular telephone number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the **subject cellular telephone** described in Attachment A., including the date, time, and duration of the communication, and the following, without geographic limit, including:

a.  IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

4

b. Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

c. IP addresses of any websites or other servers to which the subject cellular telephone connected;

d. Source and destination telephone numbers and email addresses;

e. "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2.     The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the subject cellular telephone identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers

3.     The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agencies, and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace devices, including enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4.     The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service

5

providers, shall provide the agents/officers of the investigative agencies, and other authorized federal/state/local law enforcement agencies, with the results of the pen register and trap and trace devices, including enhanced caller identification, at reasonable intervals for the duration of this Warrant and Order.

5.      Should the subject cellular telephone identified in Attachment A and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of this Order, the request for pen register and trap and trace devices, including enhanced caller identification, shall remain in effect for any new telephone to which the subject cellular telephone listed above is changed throughout the effective period of these Warrants and Orders.

6.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall be provided compensation by the lead investigative agency for reasonable expenses incurred in providing technical assistance.

7.      Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider, and the service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall not disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order to a subscriber or lessee or to any other person, except that the provider may disclose the warrant to an attorney for the provider for the purpose of receiving legal advice.

This Warrant and Order does not authorize interception of any communications as defined in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling

6

information, including cell site information, precision location information, including GPS information, related to the subject cellular telephone.

The investigative agencies, and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the subject cellular telephone by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )        No. 4:24 MJ 7004 SPM
LOCATION INFORMATION, INCLUDING )
PRECISION LOCATION INFORMATION; )   **FILED UNDER SEAL**
SUBSCRIBER AND TRANSACTIONAL )
RECORDS; CELL SITE INFORMATION; )  SIGNED AND SUBMITTED TO THE COURT FOR FILING
AND FOR A PEN REGISTER AND TRAP )  BY RELIABLE ELECTRONIC MEANS
AND TRACE DEVICES FOR PHONE )
NUMBER **(314) 939-3986**. )

**AFFIDAVIT**

I, Patrick J. Riordan, being first duly sworn, hereby depose and state as follows

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a warrant and order pursuant to Rule 41 and 18 U.S.C. 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information associated with cellular telephone number **(314) 939-3986** (hereinafter referred to as "**subject cellular telephone**") serviced by T-Mobile (hereinafter "the Provider"), and/or any service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, to disclose to the United States location information, including precision location information, transactional and subscriber data and cell site location information, and the installation and use of other pen register and trap and trace devices.

2.      I am a deputized Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI), duly appointed according to law and acting as such. Concurrent with this assignment, I am employed as a Police Officer with the St. Louis Metropolitan Police Department (SLMPD) and have been so employed for the past sixteen (16) years. I am currently assigned to the St. Louis

Division of the Federal Bureau of Investigation (FBI) as a member of the St. Louis Gateway OCDETF Task Force and have been so since 2015. Through my training and experience I am familiar with the debriefing of cooperating witnesses and/or sources of information and methods of searching locations where narcotics, narcotics proceeds, and/or weapons may be found. Additionally, I have been trained and have experience in conducting surveillance, telephone toll analysis and am familiar with the manner of importation and distribution of narcotics as well as the payment methods utilized by narcotic distributors. During the past sixteen (16) years as a Police Officer with the SLMPD, I have been involved in a multitude of drug, gang, and violent crime investigations involving arrest, interviews, informant debriefings, and surveillances. I have also been the affiant on numerous Federal and State Search Warrant Affidavits and participated in numerous investigations that employed the use of PLW's, Pen Registers and Title-III wire taps.

3.      Through my training and experience, I am also familiar with the role cellular phones play in the planning, execution, and concealment of criminal activity, including violent crime, organized crime, and drug-trafficking crimes. I am aware that individuals engaged in these criminal activities regularly carry and use cellular phones and other electronic devices capable of connecting to the internet. Through training and experience, I am familiar with law enforcement's ability to analyze records and information created and maintained by electronic communication service providers to identify and locate individuals engaged in criminal activity.

4.      The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone as part of a criminal investigation, it does not set forth all of my knowledge regarding this matter.

5.    The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agencies to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information from a cell site simulator, in an effort to locate and monitor the location of subject cellular telephone. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the **subject cellular telephone** was and continues to be used in conjunction with violations of Title 18, United States Code, Sections 2322 (knowingly own, operate, maintain or control a chop shop) and Title 18, Sections 2312 (knowingly transport stolen vehicles across state lines) and Section 2313 (knowingly sell, receive, possess, conceal or dispose of stolen vehicles crossing state line or U.S. borders) (hereinafter referred to as "the subject offenses") committed by Charlie Cruz.

6.    There is also probable cause to believe that the location information described in Attachment B to the requested warrant and order will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

## BACKGROUND CONCERNING WIRELESS PROVIDERS

7.    Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

a.    Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on

a particular account, such as local and long-distance telephone connection records, records of session times) and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

b. Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received. For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact. Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

c. Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

d. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the

device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

e.    Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

f.    Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude longitude data. In the Eastern District of Missouri, such information

is often referred to as precision location information or PLI data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-91 1 data can sometimes provide precise information related to the location of a cellular device.

g.   In order to locate the subject cellular telephone and monitor the movements of the phone, the investigative agencies, and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the United States. The investigative agencies, and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Provider, any telecommunication service providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap and trace data.

## **INVESTIGATION AND PROBABLE CAUSE**

8.    The United States, including the FBI, is conducting a criminal investigation of the criminal street gang named the Big5 and their associates, specifically **Charlie CRUZ (DOB: XX-XX-1976)**, utilizing cellular number **(314) 939-3986**, the **subject cellular telephone**, regarding the commission of the subject offenses.

9.    I am currently participating in an investigation with members of the FBI, St. Louis Metropolitan Police Department (SLMPD) and St. Louis County Police Department (SLCPD) regarding the illegal activities of subjects associated with the Big 5 Criminal Street Gang and their Six-Deuce affiliates, involving violations of Title 18, United States Code, Sections 2322 (knowingly own, operate, maintain or control a chop shop) and Title 18, Sections 2312 (knowingly transport stolen vehicles across state lines) and Section 2313 (knowingly sell, receive, possess, conceal or dispose of stolen vehicle crossing state line or U.S. borders) by individuals associated with this gang including **Charlie CRUZ**.

10.    The investigation has revealed the members of the Big5 criminal street gang (CST) are involved in a variety of organized criminal activity to include, but not limited to, narcotics trafficking, robbery, business burglaries, assaults, and an organized and calculated efforts to steal vehicles which are then brought to Charlie **CRUZ** who coordinates the gang members and pays them cash for receipt of the stolen vehicles which are then taken to chop shop locations both known and unknown. These activities are in furtherance of the gang and their criminal activities. These stolen vehicles are often given new VINs (vehicle identification numbers) to then be re-sold to unsuspecting buyers or to other gang members.  Members of the Big5 CST often used these stolen vehicles to commit additional violent crimes in the St. Louis area. These vehicles are equipped with falsified VIN's which allow these subjects to avoid law enforcement detection and alerting them the vehicle is stolen. The investigative team has learned from post arrest interviews, Confidential Source (CS) information, other law enforcement agencies, as well as from firsthand knowledge learned by the investigators that several of the vehicles are taken across state lines into neighboring states for re-sale, to be parted out for profit, and also sent across the United States border into Mexico.

11.     On or about April 2023, the investigative team began an investigation into the Big5 and their criminal activities. During the investigation, the investigative team began receiving information on a "chop shop" located at 336 Blase Avenue St. Louis, MO 63147. This location can be described as a commercial property with a business name of Road Truck and Body Repair. A further investigation revealed the "chop shop" was being managed and operated by **Charlie CRUZ**.

12.     On or about June 29, 2023, the investigative team executed a state level search warrant at 336 Blase Avenue. The primary subject, identified as **Charlie CRUZ,** was not present at the time of the warrant. Seized from that location were twelve (12) stolen vehicles, one (1) stolen Caterpillar bulldozer, and vehicle parts to other stolen vehicles. One vehicle was reported stolen from the state of Illinois. Investigators also located approximately fifteen (15) vehicle engines and transmissions that were ready to be shipped out of the country. These vehicle engines were from a salvage company in Illinois and efforts are still ongoing to determine if they were also stolen. Post arrest interviews of arrested subjects at the chop shop revealed the shop was managed and operated by **Charlie CRUZ**. Additionally, the investigative team learned that **CRUZ** dealt primarily with gang members, specifically Big5 gang members and their associates. **CRUZ** would direct these gang members to steal a variety of vehicles and bring them back to 336 Blase where **CRUZ** would pay the gang members cash for the stolen vehicles. The stolen vehicles were then provided fraudulent VIN numbers to be re-sold for profit or chopped up and parted out. Investigators learned **Charlie CRUZ** and his associates were handling and/or processing approximately thirty (30) to forty (40) stolen vehicles a month. The search warrant and related information was documented per SLMPD report number 23-029544.

13.     On or about July 9, 2023, SLCPD stopped **Charlie CRUZ** while operating a stolen blue Ford Mustang near the area of 9902 Halls Ferry Road. The Mustang had Indiana license plates "FL842ABT" affixed to the vehicle. The license plate "FL842ABT" was registered to a Toyota RAV 4 that was reported stolen on May 27, 2023. A search of the VIN revealed the Mustang was stolen from Vanita Park, MO. **CRUZ** was subsequently arrested for Tampering 1st Degree and Violation of Missouri Controlled Substance Law (VMCSL) per SLCPD report 23-26453. **CRUZ** provided statements to arresting Officer(s) that he received the vehicle from a subject named "C4". Investigators know that subject to be, Clarence Carter (DOB:  XX-XX-2003), a documented gang member who was observed during surveillances prior to the search warrant at 336 Blase Avenue and who is documented in previous incident reports at 336 Blase Ave.

14.     In the following months, investigators have made numerous arrests of Big5 gang members and their associates for Federal and State crimes. During these arrests and post arrest interviews, these subjects have identified a subject they know as "Benito" or Benny" as the main subject in charge of the stolen vehicle ring and one of the gang's main sources of income. These subjects ultimately identified a photo of **Charlie CRUZ** as the subject they and the gang refer to as "Benito" and/or "Benny". Additionally, the gang members will contact **CRUZ** via cell phone once they have "acquired" a stolen vehicle. CRUZ will then inform them where to meet for their cash payment. Since the search warrant at 336 Blase Avenue shut down that particular chop shop, the operation has moved to unknown locations. **CRUZ** will have the various gang members meet him at different locations for cash payments for the stolen vehicles. CRUZ then takes the stolen vehicles to chop shops not currently known to investigators. The vehicles are then chopped up for parts or re-VIN'd for re-sale.

15. On or around January 29, 2024, **Charlie CRUZ** was arrested operating a stolen white 2006 Chevrolet Express Van bearing Texas license plate MBS-8016 on Humes Road per Florissant Police Department report number 24-000533. The white Chevrolet Express Van was reported stolen on December 23, 2023, per SLCPD report number 23-049823. The van was stolen from the shoulder of I-55 at I-270 after the owner left the vehicle with a flat tire. The vehicle was believed to be towed from the scene by a tow truck. A subsequent investigation by Florissant PD revealed **CRUZ** was the driver of the stolen van and he was accompanied by two (2) juvenile black male passengers who have links to known members associated with the criminal street gang the Big5.

16. **CRUZ** cooperated with arresting officers and provided his new cellular number of 314-939-3986. Analysis of the phone number revealed it listed to El Pelon Towing and Repair, LLC. A search with the Missouri Secretary of State revealed the registered agent to El Pelon Towing and Repair, LLC as **Charlie CRUZ**. The company is listed as active since February 9, 2015, having a state charter number of LC001434886.

17. Two (2) solen firearms, both reported stolen from vehicle break-ins, were also recovered from inside the stolen van operated by **CRUZ**. Also located in the stolen van were three (3) license plates. The first license plate was Illinois "EK20683". This license plate is registered to a stolen Nissan Sentra sedan reported stolen on January 5, 2024, from the area of 1504 S. Hampton St. Louis, MO per SLMPD report number 24-000856. The vehicle was involved in an accident and was reported inoperable and left on the shoulder of the road. The vehicle was believed to be stolen via a tow truck from the scene.

18. The next license plate was Missouri "BD7-A0Y" which is registered to a stolen 2016 Honda Pilot SUV. This vehicle was reported stolen per SLMPD report number 24-003542

on January 18, 2004, from the area of North Euclid and Maryland Avenue. Of note, this vehicle was involved in Felony thefts from motor vehicles in the venues of Maplewood, University City and Manchester on January 27 and January 28, 2024.

19.    The final license plate located in the van was Illinois "DF21770". Computer inquiries revealed no theft and no registration. Inquiries did reveal a Felony Wanted in reference to a January 28, 2024, Robbery 1st (attempt) and Unlawful Use of a Weapon (UUW) documented per Florissant PD report 24-000510 involving a stolen Silver 2016 Honda Pilot. This vehicle had two (2) different license plates on it at the time of the crime. The rear plate was IL "DF21770" and the front license plate was MO "BD7-A0Y".

20.    Of note, on or about January 30, 2024, members of the investigative team recovered the above listed Honda Pilot bearing both above listed license plates. One arrest was made of a juvenile Big5 gang member associated with the vehicle. Spontaneous statements made by the arrested subject claimed that he (arrested juvenile) and other members of the gang steal vehicles for a Hispanic male he knows as "Benito" who pays them cash upon delivery of the vehicle.

## CONCLUSION

21.    Based on the above information, I submit that there is probable cause to believe that the **subject cellular telephone** is currently being used in connection with the commission of the subject offenses. **CRUZ** is involved in the theft along with coordinating his crew of Big5 gang members and their associates to systematically steal vehicles in furtherance of the gang and criminal organization involving **CRUZ** and others both known and unknown. Additionally, I submit there is probable cause involving tow trucks stealing vehicles which are documented by the listed police reports. **CRUZ** having a tow company and having access to towing equipment provides your affiant with the belief that **CRUZ** is assisting in the theft and illegal transportation

of the stolen vehicles. There is also probable cause to believe that the location information described in Attachment B to the requested warrant and order will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

22.     None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agencies, and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

I state under the penalty of perjury that the foregoing is true and correct.

2/5/2024
DATE

PATRICK J. RIORDAN
Special Federal Officer
Federal Bureau of Investigation (FBI)

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 on ~~January~~ February 5 , 2024.

HONORABLE SHIRLEY P. MENSAH
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

**ATTACHMENT A**
**4:24 MJ 7004 SPM**

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &
B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a
Warrant and Order requiring a telecommunications service provider reflected in Part II of this
Attachment A, to disclose the records and other information concerning the account described in
Part I of this Attachment A.

**I.      The Account(s)**

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---|---|---|---|
| **T-Mobile** | **(314) 939-3986** (subject cellular telephone) | UNKNOWN | **CRUZ, Charlie, and unknown subjects** |

**II.     The Provider**

Records and information associated with the subject cellular telephone that is within the
possession, custody, or control of **T-Mobile**, and other applicable service providers reflected on
the list contained in this Attachment A**,** including information about the location of the subject
cellular telephone if it is subsequently assigned a different call number.

1

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
| d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications | Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications | Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications [1] |
| | Metro Teleconnect | | |

---

[1] Last Update: 03/17/2019

2

**ATTACHMENT B**
**4:24 MJ 7004 SPM**

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

## I.    PRECISION LOCATION INFORMATION

### A.    Information to be Disclosed by the Provider

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from February 5, 2024 to March 20, 2024, 11:59 p.m. (CT) during all times of day and night, regarding the location of the subject cellular telephone described in Attachment A.

"Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agencies.

### B.    Information to Be Seized by the United States

All information described above in Part I, Section A that constitutes evidence of violations of  Title 18, United States Code, Sections 2322 (knowingly own, operate, maintain or control a chop shop) and Title 18, Sections 2312 (knowingly transport stolen vehicles across state lines) and

1

Section 2313 (knowingly sell, receive, possess, conceal or dispose of stolen vehicle crossing state line or U.S. borders) (hereinafter referred to as "the subject offenses"), by persons unknown.

## II.     CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA

For the **subject cellular telephone** identified in Attachment A, the following telecommunication records and information, but not the contents of any communication for the past thirty (30) days from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

**Information to be Disclosed by the Provider**

1.     All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2.     Length of service;

3.     All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI")  numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, Media Access Control (MAC),  and primary long-distance carrier;

4.     Subscriber information available for any originating telephone number;

5.     Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the subject cellular telephone) for the above-specified time period;

      6.     Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone;

      7.     Cellular telephone records and information pertaining to the following, for the above-specified time period:

      (a)     call detail information such as (provided in an electronic format specified by the agents/officers of the investigative agencies, and other authorized federal/state/local law enforcement agencies);

      (b)     cell site activation information, including information identifying the antenna tower receiving transmissions from the subject cellular telephone number, and any information on what portion of that tower is receiving a transmission from the subject cellular telephone number, at the beginning and end of a particular telephone call made to or received by the subject cellular telephone number;

      (c)     numbers dialed;

      (d)     call duration;

      (e)     incoming numbers if identified;

      (f)     signaling information pertaining to that number;

      (g)     a listing of all control channels and their corresponding cell sites;

      (h)     an engineering map showing all cell site tower locations, sectors and orientations;

      (i)     subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the subject cellular telephone;

(j)        historical location estimates and range to tower information, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD), True Call;

(k)        Time Difference of Arrival (TDOA), and,

(l)        Internet Protocol (IP addresses) utilized by and signaled to and from the subject cellular telephone.

## III.    PEN REGISTERS AND TRAP AND TRACE DEVICES

For the subject cellular telephone identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1.        Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agencies and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the subject cellular telephone number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the **subject cellular telephone** described in Attachment A., including the date, time, and duration of the communication, and the following, without geographic limit, including:

a.    IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

4

b.  Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

c.  IP addresses of any websites or other servers to which the subject cellular telephone connected;

d.  Source and destination telephone numbers and email addresses;

e.  "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2.  The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the subject cellular telephone identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers

3.  The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agencies, and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace devices, including enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4.  The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service

5

providers, shall provide the agents/officers of the investigative agencies, and other authorized federal/state/local law enforcement agencies, with the results of the pen register and trap and trace devices, including enhanced caller identification, at reasonable intervals for the duration of this Warrant and Order.

5.      Should the subject cellular telephone identified in Attachment A and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of this Order, the request for pen register and trap and trace devices, including enhanced caller identification, shall remain in effect for any new telephone to which the subject cellular telephone listed above is changed throughout the effective period of these Warrants and Orders.

6.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall be provided compensation by the lead investigative agency for reasonable expenses incurred in providing technical assistance.

7.      Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider, and the service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall not disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order to a subscriber or lessee or to any other person, except that the provider may disclose the warrant to an attorney for the provider for the purpose of receiving legal advice.

This Warrant and Order does not authorize interception of any communications as defined in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling

information, including cell site information, precision location information, including GPS information, related to the subject cellular telephone.

The investigative agencies, and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the subject cellular telephone by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.